UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KAREN T. ESLIN, | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:11-CV-134 (JCH) |
| | : | |
| v. | : | |
| | : | |
| HOUSING AUTHORITY OF THE | : | JANUARY 13, 2012 |
| TOWN OF MANSFIELD, et al., | : | |
|    Defendants. | : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (DOC. NO. 37)**

## I.  INTRODUCTION

Plaintiff, Karen T. Eslin ("Eslin"), brings this action against the Housing Authority of the Town of Mansfield ("the Housing Authority"), Rebecca M. Fields, in her official capacity as Executive Director of the Housing Authority, and Stacey Vangsness, in her official capacity as Section 8 Coordinator of the Housing Authority.  Eslin seeks money damages under 42 U.S.C. § 1983 for violations of her rights under the United States Housing Act, 42 U.S.C. § 1437f, as well as her right to due process under the Fourteenth Amendment of the United States Constitution.

The defendants have filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Eslin fails to state a claim upon which relief may be granted.  Doc. No. 37.  For the following reasons, the court grants the defendants' Motion.

## II.  BACKGROUND[1]

Eslin began participating in the Housing Authority's Section 8 Housing Choice Voucher Program in 2003 ("the Section 8 Program").  Complaint (Doc. No. 1) ¶ 8. Under the Section 8 Program, the Housing Authority made monthly payments to Eslin's

---

[1] For the purposes of this Motion to Dismiss, the court takes the factual allegations in the Complaint as true, and draws all reasonable inferences in favor of the plaintiff.

1

landlords, Kathleen and Arthur Stearns ("the Stearns"), to cover a portion of the rent for Eslin's apartment.  Id. ¶¶ 21-22.  These payments were made pursuant to a Housing Assistance Payments Contract between the Housing Authority and the Stearns.  Id.  Eslin paid the balance of each month's rent herself.  Id.

During 2010, Eslin complained "numerous times" to the Stearns about property conditions that "she believed affected her health and safety."  Id. ¶ 23.  These included: a chronic infestation of bats in the attic; a home heating oil spill in the basement that had not been cleaned; and mold throughout the basement and exterior walls.  Id.  The Stearns did not correct these problems.  Id.

In February 2010, the Housing Authority allowed the Stearns to increase Eslin's rent by $200.00 per month.  Compl. ¶ 22.  Under applicable regulations, Eslin, not the Housing Authority, was responsible for paying this additional monthly cost.  Id.

In March 2010, Eslin "wrote to her landlords, complaining about the rent increase and noting other conditions in the apartment that might constitute violations of health and safety codes."  Id. ¶ 25.  On or about May 29, 2010, the Stearns "advised Eslin in writing that they would no longer lease the apartment to her."  Id. ¶ 27.  The Stearns offered to lease Eslin a smaller, adjacent apartment, but she declined, finding it to be "in deplorable condition."  Id.

On June 11, 2010, Eslin received a letter from Vangsness, the Housing Authority's Section 8 Coordinator, advising Eslin that her lease was being terminated and that, if she wanted to remain in the Section 8 Program, she needed to obtain a new housing voucher for a different unit.  Compl. ¶ 29; id. Ex. A.  On or about July 22, the plaintiff met with Vangsness, who told her that she needed to vacate her current

apartment by July 1 and that no rental assistance payments would be made to the Stearns for the month of July. Id. ¶ 33. Vangsness did not inform Eslin that her Section 8 Program benefits were being terminated entirely at this time. Id. ¶ 24.

At some point following the meeting, Eslin advised the Stearns that she would be willing to move into the smaller apartment they had previously offered. Id. ¶ 35. The Stearns, however, withdrew the offer. Id.

On June 30, 2010, Vangness sent Eslin a letter informing her that her Section 8 Program benefits would be terminated as of July 31, 2010, and advising her of her right to request an informal hearing to dispute the termination. Compl. ¶ 36; id. Ex. B. While the letter said her benefits would terminate as of July 31, no housing assistance payment was made on Eslin's behalf for the month of July. Id. ¶ 40.

Eslin subsequently requested an informal hearing, which was held on August 5, 2010. Id. ¶¶ 41-42. On August 11, Eslin received a decision from the hearing officer sustaining the termination of her assistance. Id. ¶ 47.

### III.   STANDARD OF REVIEW

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court takes the allegations of the Complaint as true and construes them in a manner favorable to the plaintiff. See, e.g., Hoover v. Ronwin, 466 U.S. 558, 587 (1984); Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002). The court must draw all reasonable inferences in the plaintiff's favor. See, e.g., Yung v. Lee, 432 F.3d 142, 146 (2d Cir. 2005).

A motion to dismiss for failure to state a claim tests only the adequacy of the Complaint. See United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). Bald assertions, and mere conclusions of law, do not suffice to meet the plaintiff's pleading

obligations. See Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006). Instead, a plaintiff is obliged to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd on other grounds sub. nom. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 129 S.Ct. at 1949.

**IV. DISCUSSION**

 A. Bringing Multiple Claims Under 42 U.S.C. § 1983

Eslin brings two sets of claims under 42 U.S.C. § 1983 ("section 1983"), alleging that the defendants' termination of her Section 8 Program benefits violated, first, her rights under the United States Housing Act, 42 U.S.C. § 1437f(o) ("the Housing Act"), and, second, her procedural due process rights under the Fourteenth Amendment to the United States Constitution. Compl. ¶¶ 5, 55, 57. The defendants do not dispute that Eslin is entitled to bring a section 1983 action for violation of her rights under the Housing Act, but they argue that she is not entitled to a separate count for violation of her constitutional due process rights. See Def.'s Reply (Doc. No. 53) at 2. The court finds—and the defendants cite—no authority to support this contention.

Section 1983 "provides a cause of action for violations of federal statutes as well as the Constitution." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990). There is nothing in the statute or associated case law to suggest that a plaintiff who has suffered a violation of both statutory rights and constitutional rights must limit herself to a single section 1983 claim. On the contrary, plaintiffs commonly plead violations of both the

Housing Act and the Fourteenth Amendment when challenging the termination of public housing benefits under section 1983.  See, e.g., Escalera v. New York City Housing Authority, 425 F.2d 853, 856 (2d Cir. 1970); Falkowski v. Noth Fork Housing Alliance, Inc., No. 08-CV-2550, 2009 WL 3174029, at *5 (E.D.N.Y. Sept. 30, 2009); Loving v. Brainerd Housing and Redevelopment Authority, No. 08-1349, 2009 WL 294289, at *1 (D. Minn. Feb. 5, 2009).

> B.  Claims Against the Housing Authority

Pursuant to the Supreme Court's decision in Monell v. Department of Social Services, a "local government may not be sued under [section 1983] for an injury inflicted solely by its employees or agents."  436 U.S. 658, 694 (1978).  Instead, section 1983 relief against municipal entities is limited to cases in which a plaintiff's injuries are caused by "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  Id.  When a plaintiff does not claim "that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified, but rather that they were taken or caused by an official whose actions represent official policy, the court must determine whether the official had final policymaking authority in the particular area involved."  Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000).  A showing that "the official has been granted discretion in the performance of his duties" does not suffice to establish final policymaking authority.  Id.

In this case, the defendants argue that the plaintiff has failed to allege either that her injuries were the result of an official policy or custom of the Housing Authority or that the actions of defendants Field and Vansgness may fairly be said to represent the

official policy of the Housing Authority. Def.'s Mem. in Supp. (Doc. No. 37-1) at 6-8. The plaintiff does not dispute this claim, but argues that the Monell standard does not apply to this case because the Housing Authority "is not an instrumentality of any municipality." Pl.'s Mem. in Opp. (Doc. No. 46) at 8. The court disagrees.

The Second Circuit and district courts within it have repeatedly held that Monell's "policy or custom" standard applies to independent public corporations created under state law, such as transit and housing authorities. See, e.g., Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 133, 137 (2d Cir. 1999) (applying Monell to a section 1983 claim against OTB, a public benefit corporation created under state law); Carrero v. New York City Housing Authority, 890 F.2d 569, 576-77 (2d Cir. 1989) (applying Monell to a section 1983 claim against the New York City Housing Authority); McIntyre v. NuHealth—Nassau University Medical Center, No. 11-cv-3934, 2011 WL 4434227, at *4 n.4 (E.D.N.Y. Sept. 19, 2011) ("Public benefit corporations . . . are municipal entities for the purposes of Section 1983."); Sewell v. New York City Transit Authority, No. 90-cv-3734, 1992 WL 202418, at *2 (E.D.N.Y. Feb. 10, 1992) ("The 'policy or custom' requirement of Monell applies to public corporations as well as to municipalities."); see also Solomon v. Philadelphia Housing Authority, 143 Fed. Appx. 447, 456 n.14 (3rd Cir. 2005) (finding Monell applicable to the defendant housing authority despite the fact that state law explicitly stated that the authority should "in no way be deemed to be an instrumentality of a city or country, or engaged in the performance of a municipal function").

Thus, the fact that "the defendant Housing Authority is an independent public corporate body" established pursuant to Connecticut state law, rather than a

6

municipality or municipal agency, does not exempt Eslin from the requirements of Monell. Pl.'s Mem. in Opp. at 8. Because Eslin has failed to allege that her federal rights were violated as a result of either the Housing Authority's official policy or custom or the actions of employees with final policymaking authority, her section 1983 claims against the Housing Authority must be dismissed.

### C. Claims Against the Individual Defendants

Eslin also brings claims against defendants Fields and Vangsness in their official capacities. While personal capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell, 436 U.S. at 660 n.55). As in a suit against the entity itself, a plaintiff bringing an official capacity suit against an entity's employee must plead and prove that "the entity's policy or custom . . . played a part in the violation of federal law." Id. at 166 (internal quotation marks and citations omitted). Accordingly, Eslin's official capacity claims against Fields and Vangsness fail for the same reason her claims against the Housing Authority itself fails: her Complaint includes no allegations that the Housing Authority's policy or custom played a role in the violation of her statutory and constitutional rights.

## V. CONCLUSION

For the foregoing reasons, the court grants the defendants' Motion to Dismiss

(Doc. No. 37).  The plaintiff, however, has leave to re-plead her claims.[2]  If she can re-plead consistent with this opinion, an Amended Complaint must be filed within (30) days of this Ruling.

**SO ORDERED.**

    Dated at Bridgeport, Connecticut this 13th day of January, 2012.

                                                            /s/ Janet C. Hall
                                                            Janet C. Hall
                                                            United States District Judge

---

[2] The defendants ask the court to dismiss Eslin's Complaint with prejudice, arguing that "any amendment would be futile."  Def.'s Mem. in Supp. (Doc. No. 37-1).  In making this argument, however, the defendants rely on several documents not attached to the Complaint, including an affidavit from defendant Vangsness, the transcript of Eslin's Section 8 termination hearing, documents submitted by the parties at that hearing, and the lease agreement between Eslin and the Stearns.  The court declines to consider these documents in the context of this Motion to Dismiss.