# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| KARYN T. ESLIN,       * | |
| PLAINTIFF       * | |
|       * | |
| v.       * | Civil Action No |
|       * | 3:11-CV-00134 (JCH) |
| HOUSING AUTHORITY OF THE TOWN OF       * | |
| MANSFIELD, ET AL.       * | |
|       * | March 19, 2012 |
| DEFENDANTS       * | |
|       * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO DISMISS

### I.   INTRODUCTION

The Defendants have moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), because they assert that Plaintiff Karyn Eslin has failed to properly meet the Supreme Court standard identified in Monell v. Department of Social Services., 436 U.S. 658 (1978) in her claims under 42 U.S.C § 1983 against the  Housing Authority of the Town of Mansfield ("the MHA"). Monell (and its progeny) requires a plaintiff in a §1983 suit to allege that the unlawful or unconstitutional conduct by municipal officials was taken pursuant to an official policy or custom, or was taken by an official with final policy-making authority. Ms. Eslin has sufficiently pled that her due process rights were violated by actions taken by the final policy-maker for the MHA's Section 8 program. Thus, the plaintiff respectfully requests that this Court deny the Defendants' motion to dismiss.

ORAL ARGUMENT IS REQUESTED

II.    <u>**STATEMENT OF FACTS**</u>

Plaintiff Karyn Eslin agrees with the Defendants' description of the material allegations in the Amended Complain, ECF Document No. 61, provided in their Memorandum of Law in Support of their Motion to Dismiss. In addition, she would add the following:

On August 5, 2010, Ms. Eslin, her attorney, Defendant Stacey Vangsness, Defendant Rebecca Fields, and the impartial hearing officer all attended the informal hearing regarding Ms. Eslin's proposed termination from the Section 8 program. At the informal hearing, the Defendants provided no legal authority for the proposed termination. Defendant Fields stated that the MHA had followed all of the rules, but she was not prepared to identify any of those rules. The evidence proffered by the Defendants at the hearing showed that Ms. Eslin's landlords – the Stearns – had chosen to discontinue the lease with Ms. Eslin after June 30, 2010 and that she had failed to vacate the apartment by that date. Am. Compl., ¶ 43, ECF Document No. 61.

In the hearing officer's decision, dated August 11, 2010, the hearing officer found that Ms. Eslin had violated family obligations of the Section 8 program, but he did not specify what obligations had been violated or state the elements of fact or law that could provide its basis for sustaining the termination.  <u>Id.</u> ¶ 46.

On August 12, 2010**,** Ms. Eslin received a notice to quit possession from her landlords for nonpayment of the full rent for July 1, 2010.  Shortly thereafter, she was served with a writ of summons and complaint, seeking to evict her.  <u>Id.</u> ¶ 45.

In a letter dated August 26, 2010, Ms. Eslin's counsel requested that, pursuant to 24 C.F.R. §982.555(f)(2), Defendant Fields, the Housing Authority's executive director, use her authority  to reverse the hearing officer's decision and reinstate the plaintiff to the Section 8

rental assistance program because the decision was contrary to HUD requirements and law.

Defendant Fields denied that request.  Id. ¶ 48.

## III.        ARGUMENT

### A.  Standard of Review For Motion to Dismiss

In deciding a Rule 12(b)(6) motion to dismiss, a court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). To defeat a motion to dismiss under Rule 12(b)(6), it is well-settled that a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility is established where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The fundamental issue at the dismissal stage is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Phelps v. Kapnolas, 308 F.3d 180, 185-85 (2d Cir. 2002).

Additionally, the Second Circuit has long held that §1983 actions are entitled to a liberal reading on a motion to dismiss. "An action, especially under the Civil Rights Act, should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims." Escalera v. New York City Hous. Auth., 425 F.2d 853 (2d Cir. 1970) (reversing and remanding dismissal of § 1983 claims against housing authority for alleged due process deprivations). See also Paige v. Coyner, 614 F.3d 273, 284 (6th Cir. 2010) (denying motion to dismiss on §1983 claim against county and county port authority and holding that plaintiff's allegation in her complaint that the individual defendant "acted pursuant to the official policies of [municipal defendants] in that

[individual defendant] has final policy making authority" was sufficient to withstand a motion to dismiss); <u>Hamad v. Nassau Cnty. Med. Ctr.</u>, 191 F. Supp.2d 286, 303 (E.D.N.Y. 2000) (denying municipal hospital's motion to dismiss § 1983 claim) ("[A]t this point in the litigation, it is impossible for the Court to conclusively determine the extent to which the decisions by NCMC officials constituted decisions by 'municipal policymakers.'"); <u>Miller v. Ethan Allen Global, Inc.</u>, Civil Action No. 3:10–CV–1701 (JCH), 2011 WL 3704806 (D. Conn. Aug. 23, 2011); <u>Super v. J.D'Amelia & Assocs.</u>, No. 3:09-CV-831 (SRU), 2010 WL 3926887 (D. Conn. Sept. 30, 2010). One trial court in this Circuit has permitted an action similar to this action to proceed in light of <u>Iqbal</u>. <u>Boykins v. Cmty. Dev. Corp. of Long Island</u>, No.10-CV-3788 (JS)(ARL), 2011 WL 1059183 (E.D.N.Y. March 21, 2011).

**B. The Defendants' Motion to Dismiss Should Be Denied Because the Wrongful Conduct of the MHA Was Made by Officials with Final Policy-Making Authority, Satisfying the Requirements of <u>Monell</u>**

In their Second Motion to Dismiss, the Defendants argue that Plaintiff Karyn Eslin failed to allege that the wrongful conduct she described in her Complaint was made pursuant to an official policy, custom, or practice, or by an official with final policy-making authority. Defendants advance two arguments in reaching this conclusion. First, they argue that Defendant Rebecca Fields, executive director of the MHA, was merely applying policy and not making it when she terminated the Section 8 benefits of Ms. Eslin. Second, they argue that all final policymaking authority for the MHA resides solely with the board of commissioners for the MHA. Both of these arguments suggest that the actions taken against Ms. Eslin, whether unlawful or not, were not actions that reflect the official acts of the MHA but rather were the independent acts of MHA employees. These arguments do not comport with either the law or the facts of this case.

This is a case about responsibility. Like many municipal agencies, the MHA disperses power among a board of commissioners, an executive director, and other staff members.  If the MHA's written policies (promulgated by its board of commissioners) had clearly contained the unambiguous and correct answer about whether it was lawful to terminate Ms. Eslin, and the MHA staff had ignored those policies, then the MHA would not be responsible for the actions of its staff. But that is not what happened in this case. Instead, there was no established policy that controlled whether Ms. Eslin could legally be terminated or not.

In seeking to terminate Ms. Eslin from the Section 8 program the Defendants adopted the position that Ms. Eslin's failure to move after being asked to by her landlords was a serious breach of her lease. Yet, the MHA's written policies and the federal regulations about such an issue were not clear; someone had to make a decision about what to do regarding Ms. Eslin if they were to terminate her from the program. Ultimately, Rebecca Fields, the executive director, made several critical choices in the face of this legal uncertainty: she approved the decision to send a notice of termination to Ms. Eslin; she ordered the cessation of payments from the MHA to Ms. Eslin's landlords prior to the date in the notice of termination and the adverse hearing decision; and she later refused to overturn the hearing officer's decision terminating Ms. Eslin from the Section 8 program when asked to do so.  In so doing, Defendant Fields made policy for the MHA. In particular, her choice to sustain the hearing officer's decision to terminate Ms. Eslin was the final, unreviewable action of the MHA. Thus, the choice to terminate Ms. Eslin constitutes the official action of the MHA for which it is responsible.

Legally, this case is the same as Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), a landmark Supreme Court decision in which the court held that even a single act taken by a final policy-maker can give rise to municipal liability under § 1983. Pembaur involved a suit brought

by a doctor against the City of Cincinnati for sending deputy sheriffs to break into his clinic to arrest witnesses who had failed to appear before a grand jury. Prior to breaking down the door with an axe, the deputies, who were uncertain whether they held the legal authority to chop down the door, called the prosecuting attorney for guidance. He advised them to "go in and get [the witnesses]." Pembaur, 475 U.S. at 473. This statement made the city liable under § 1983. Id. at 485.

In Pembaur, the Court recognized that the official policy of a municipality extends beyond its written policies or formally adopted rules promulgated by an official governing body. Id. at 480. Rather, official policy (and thus liability under § 1983) can arise by a single action "tailored to a particular situation and not intended to control decisions in later situations." Moreover, policy can be made by lower-level officials if they are "authorized decision makers." Id. In Pembaur, the prosecuting attorney acted as the final policy-maker for the city, even though policy-making power generally resided with the city's legislative body. Thus, the court established a theory of municipal liability for decisions made by final policy-makers. Id.

If allowed to proceed with this case, the Plaintiff will be able to show, through careful scrutiny of the operation of the MHA's Section 8 program and the specific circumstances surrounding the termination of Ms. Eslin, that the unlawful actions taken against her were made or ratified by the final policy-maker of the housing authority for the Section 8 program: Defendant Rebecca Fields.  The Plaintiff can demonstrate that, as the executive director, Defendant Fields' decisions are attributable to the MHA because she was given authority to operate the Section 8 program by the board of commissioners, pursuant to their right to delegate powers and duties to employees provided by Conn. Gen. Stat. § 8-41(a). Defendant Fields' authority included the ability to make decisions that create housing authority policy, such as

6

when and under what circumstances a participant may be terminated from the Section 8 program when the federal regulations or other program rules fail to specify whether and how to do so. At its core, Defendant Fields' actions represent "a deliberate choice to follow a course of action … from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur, 475 U.S. at 483.

### 1. Defendants Erroneously Assert that Defendant Fields Was Not Delegated Any Final Policymaking Authority

#### a. *Defendant Fields Had Final Policy-Making Authority in the Particular Area of Terminations of Section 8 Assistance*

Defendants are incorrect in focusing their argument on the fact that Defendant Fields does not have broad, general policymaking authority for MHA. Although policy-making power is generally vested within the MHA's board of commissioners and, with respect to the MHA's Section 8 program, officially promulgated in the MHA's Administrative Plan (see discussion infra Part II.B.1, p. 13), courts have held that it is not general policy-making power that matters in assessing whether an official is a "final policy-maker" for §1983 purposes, but rather whether the official in question "has final authority [such that] his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Rookard v. Health and Hospitals Corp., 710 F.2d 41, 45 (2d Cir. 1983) (emphasis added). It is of no importance that the MHA board has the general policymaking authority for the MHA. Rather, the proper inquiry, as discussed below, is whether Defendant Fields had policymaking authority specifically in Section 8 matters.

In Rookard, the former director of nursing for Harlem Hospital brought claims under § 1983 for her wrongful demotion and subsequent termination by the hospital's acting executive director. The Southern District dismissed her complaint on Monell grounds, finding that she did

not prove that an official policy caused the adverse employment actions against her. On appeal, the Second Circuit reversed, stating that,

> [w]here an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy. … An allegation of policy-making authority thus requires proof of the official's scope of employment and his role within the municipal or corporate organization. An official's title, though not dispositive of his authority to make policy is relevant for the inference fairly to be drawn therefrom.

Id. at 45 (citations omitted). The court also noted that,

> [t]he issue raised in Monell is not whether a particular official generally may be characterized as a policy-maker, but whether that official's particular decision established a policy fairly attributable to the municipality. Thus municipal liability may be predicated upon the constitutional acts of a subordinate official who has been delegated final authority in limited areas.

Id. at n.3 (emphasis added).  The court found that the executive director held a "top level position ... and had authority to order" Ms. Rookard's demotion and that his decisions were final. Based on these facts, the court found that the executive director had the authority to make policy. Id.

Later, in Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000), the Second Circuit held that a county sheriff, and not a county corrections commission, county manager or any other government official or body, was the final policymaking official with respect to the conduct of officers at the county jail where jail employees harassed and intimidated plaintiffs for speaking publicly and cooperating with an FBI investigation about alleged inmate abuse. In so holding, the court held that,

> [T]he official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be responsible under state law for making policy in that area of the [municipality's] business. Thus, the court must ask whether the governmental official [is a] final policymaker [] for the local government in a particular area, or on [the] particular issue involved in the action.

(emphasis and alteration in original) (citations and internal quotation marks omitted).

Recently, in this District, in <u>Garlasco v. Stuart</u>, 602 F. Supp.2d 396 (D. Conn. 2009), a landowner brought a §1983 claim against the town of Bridgewater and its town selectman and CEO alleging, <u>inter alia</u>, violations of due process in connection with the selectman's order to block plaintiff from accessing his property. In discussing whether the town could be held liable for the actions of the selectman, the court held that "the critical inquiry is not whether an official generally has final policymaking authority; rather, the court must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." <u>Id.</u> at 418 (quoting <u>Roe v. Waterbury</u>, 532 F.3d 31, 37 (2d Cir. 2008)). The court held that because the town selectman was the town's CEO and "oversaw the day-to-day operation of Town government [and] ensured the care and maintenance of Town property," he was the final policymaker with respect to the actions to block plaintiff from his property even though a Board of Selectmen oversaw the town generally. <u>Id.</u> at 418.

Other jurisdictions have also recognized that final policymaking authority need not be general authority to make policy for all matters. In a case from the Northern District of Georgia, <u>Baxter v. Fulton DeKalb Hospital Authority</u>, 764 F. Supp. 1510 (N.D. Ga. 1991), the court held that a hospital authority violated a paramedic's due process rights in violation of §1983 when it refused to reinstate his employment after he was cleared of misconduct charges. In applying <u>Monell</u> and <u>Pembaur</u>, the Georgia court held that "a policy can be established by a single lower level decision-maker if he is the final policy-maker for the city on that particular subject matter." <u>Id.</u> at 1523. The court continued,

> clearly, the actions of [individual defendant] can be attributed to the Hospital Authority as [individual defendant] is the executive director. As executive director, it was [individual defendant] who was given the authority to accept or reject the Step IV Grievance Committee's report regarding the allegations against plaintiff. As the ultimate decision-maker for Grady Memorial Hospital,

he had the power to override [individual defendant's] decision and reinstate plaintiff. By failing to do so, he adopted [individual defendant's] decision.

Id.

In this case, general governance of the MHA is vested in a five-member board of commissioners. Conn. Gen. Stat. §8-41(a). While the board thus has the general policymaking authority for the MHA as a whole, Ms. Eslin has alleged in her Complaint, and she will be able to demonstrate, that Defendant Fields is a final policymaker for the MHA in the particular area of terminations of Section 8 participants. Defendant Fields served in a "top level position" and oversaw the "day-to-day operation" of the MHA's Section 8 program in accordance with the authority delegated to her. See  Rookard, 710 F.2d at 45; Garlasco, 602 F. Supp.2d at 418. Just as in Rookard where the executive director did not have policymaking authority for all matters concerning the hospital but was still the final policymaker for the actions at issue, Plaintiff should be permitted to show that Defendant Fields has policymaking authority for Section 8 matters and that the established practice of the MHA is to allow the executive director full authority to make policy in the particular area of Section 8 termination proceedings when there is no clear controlling policy in either the federal regulations or the MHA's Administrative Plan. (See discussion infra Part II.B.2, pp. 14-17).  Similarly, as noted below, Ms. Eslin will be able to demonstrate that the board of commissioners assumes a passive role in the area of Section 8 terminations and that the standard operating procedure of the MHA is for the board of commissioners to acquiesce to the decisions made by the MHA's executive officers with respect to terminating individual Section 8 participants, thereby delegating to the executive officers final policymaking authority as to these participants.

      b.   *Under both State Law and as a Matter of Longstanding Practice, the MHA Board Of Commissioners Has Delegated Final Policy-Making Authority to Defendant Fields*

The determination of whether a defendant has policymaking authority requires an examination of state law, local law, custom, usage, and acquiescence of other officials. Jeffes v. Barnes, 208 F.3d at 57 (2d Cir. 2000). Under Pembaur, the Court held that the single action of a prosecuting attorney could bind the City of Cincinnati under §1983 even though policymaking power generally rested with the city's legislative body. The Court explained that policymaking authority does not arise in singular manner, but can "be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." 475 U.S. at 483. The Defendants' assertion that no policymaking authority was delegated to Defendant Fields because she obtained no such grant or delegation from the United States Housing Act or Connecticut General Statutes is therefore erroneous. Defendants' formulaic and rigid interpretation of the law ignores controlling authority that recites the factors that a court should consider in determining whether a municipal official has policymaking authority, whether it results from a legislative grant or delegation.

After Pembaur, the Supreme Court reaffirmed its holding that "whether a particular municipal official has 'final policy-making authority' is a question of state law." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (plurality opinion) (emphasis in original).  The Court subsequently reiterated that "the identification of those officials whose decisions represent the official policy of the local government" entails "reviewing the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (citations and internal quotation marks omitted).  Moreover, in discussing when an official may be a final policymaker, the Court held

that municipal liability can attach on the final policymaker theory if there was "acquiescence [by the official final policymaker] in a <u>longstanding practice or custom which constitutes the standard operating procedure</u> of the local government entity." <u>Id.</u> (emphasis added) (citation and internal quotation marks omitted).

As the <u>Jett</u> Court notes, delegation of final policymaking authority can occur not just through an express delegation, but when an official final policymaker acquiesces in the actions of the municipal entity's standard operating procedure. Similarly, in <u>Young v. City of Providence</u>, 396 F. Supp. 125 (D. R.I. 2005), the District of Rhode Island held that the police chief could be the final policymaker for the city regarding the training of police officers despite the fact that the town charter vested authority in the commissioner of public safety. In so holding, the court held that "a final policymaker need not have 'official' authority to make final decisions, such authority can be implied from a continued course of knowing acquiescence by the governing body in the exercising of policymaking authority by an agency or official." <u>Id.</u> at 143 (*citing* <u>Spell v. McDaniel</u>, 824 F.2d 1380 (4th Cir. 1987)). Because the commissioner had acquiesced in the chief's training of police officers, delegated some authority to do so, and did not review the chief's actions, the court found that the chief was the final policymaker for the city on the training issue.

In the instant case, a review of "state or local positive law, including custom or usage" and the "custom or practice which constitutes the standard operating procedure" reveals that Defendant Fields had been delegated the authority to make policy for Section 8 matters—and not simply to apply policy as Defendants suggest. The Connecticut statute that establishes the general governance structure of the MHA vests power generally in a five-person board of commissioners also provides that, "[a]n authority may delegate any of its powers and duties to

one or more of its agents or employees." Conn. Gen. Stat. § 8-41(a). Such delegation has occurred here, based upon the customs and practices of MHA and the board's acquiescence to its standard operating procedures.

Pursuant to the authority granted it under the General Statutes, the board of commissioners of the MHA has adopted an Administrative Plan, and Ms. Eslin can demonstrate that it sets out the policies under which the MHA conducts business. Adoption of such an Administrative Plan is mandated by the federal regulations for housing authorities that administer Section 8 programs. 24 C.F.R. §982.54. The MHA's Administrative Plan explicitly sets out that the principal staff member of the MHA is the executive director, who is responsible for carrying out the policies of the MHA and is given responsibility for hiring, training, and supervising MHA staff in order to manage the day-to-day operations of the MHA's housing programs, including the Section 8 program. The Administrative Plan also gives authority to the executive director to engage in budgeting and financial planning for the agency, which presumably includes the authority to initiate, suspend, or stop payments from the MHA pursuant to its contractual commitments to landlords.

The Plaintiff will be able to establish that the board has thus delegated final policymaking authority to Defendant Fields not only in that it has expressly given her management and control over operation of the Section 8 program (and therefore the ability to make policy for it, as discussed below), but also in that it assumes a completely passive, if not non-existent, role in the area of Section 8 terminations, thereby acquiescing to the decisions made by the MHA's officials with respect to terminating individual Section 8 participants according to the MHA's standard operating procedure. In fact, the Plaintiff will be able to demonstrate that the board, aside from promulgating the Administrative Plan, was not involved in making any other policies with

respect to MHA's Section 8 program. The board has no meaningful further involvement in Section 8 matters. The board has therefore simply acquiesced in a longstanding MHA operating practice of allowing Defendant Fields to create MHA policy with respect to the Section 8 program.

With respect to Ms. Eslin, the Plaintiff will be able to show that Defendant Fields was the final policymaker for her unlawful termination from the Section 8 program. It was Defendant Fields who ratified the actions of Defendant Vangsness to termination Ms. Eslin. It was Defendant Fields who ordered that payments to Ms. Eslin's landlords stop in July. It was Defendant Fields who declined to overturn the hearing officer's decision. The Plaintiff will be able to show that it is customary for Defendant Fields—and not the board—to make such decisions and formulate such policies.

### 2. Defendants Erroneously Assert that Defendant Fields Was Simply Applying Policy and not Making Policy

While the MHA Administrative Plan sets out in substantial detail the written policies of the MHA with respect to the operation of the Section 8 program, its provisions by necessity do not and cannot cover every single factual situation that might be encountered by MHA staff or program participants. Moreover, it explicitly leaves open many types of decisions for MHA staff to make.[1]  Practically speaking, by delegating the management of day-to-day operations of MHA programs to Defendant Fields, the board has transferred to her its authority to make policy for the MHA by allowing her to make decisions about who, when, and how to terminate Section 8

---

[1] For example, the Administrative Plan requires that a program participant be terminated from the Section 8 program whenever she is "evicted from a unit… for a serious or repeated violation of the lease." MHA Administrative Plan at 12-2.  Yet, the MHA leaves open the criteria of what conduct constitutes a "serious or repeated violation of the lease," by setting out a non-exclusive list and adding, "[g]enerally, the criteria to be used is whether the reason for the eviction was through no fault of the tenant or guests." Id.

participants from the program within the broad limits articulated by the Administrative Plan and the federal regulations.

In exercising her authority, Defendant Fields clearly has the power to create policy in situations where no guidance has been provided in the administrative policies governing the MHA Section 8 program. Because the federal regulations and Administrative Plan's provisions do not cover every potential situation in the administration of the Section 8 program, by virtue of having authority over the Section 8 program, Defendant Fields has the authority to make policy in these interstices and gaps when she—and not the board—makes decisions regarding program participants. Her actions, then, are not merely the application of existing policy—she cannot apply policy when none has been articulated. Instead, her decisions are acts of policymaking for the MHA, filling in the inherent extant holes and clarifying gray areas of the MHA's policy where there is legal uncertainty. This is true especially in light of the board's passive role in MHA's operations.

Moreover, it cannot be that the policies of the MHA are established only by the federal regulations or by the board's formally adopted policies, such as a broad statement in the Administrative Plan to permit actions by MHA staff as long as they comply with federal regulations and program rules. Such an arrangement would broadly insulate the MHA from accountability for any specific decision made by executive officers in uncertain areas and close cases that are intended to further the goals of the MHA, and, indeed, that establish its official policy with respect to those close calls. "If, however, a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, §1983 could not serve its intended purpose." Praprotnik, 485 U.S. at 126.

In the instant case, it is not by any means clear under the federal regulations or the MHA's Administrative Plan that the MHA was compelled to stop payments to Ms. Eslin's landlords prior to the issuance of the decision in her hearing because the lease had expired (and thus, allegedly, the HAP contract expired). Even less so, the MHA's Administrative Plan did not resoundingly compel – nor patently disallow – the termination of Ms. Eslin from the Section 8 program for holding over in her apartment after her lease had allegedly expired. Rather, these decisions were uncertain areas where the MHA made a conscious choice, through its executive director, to pursue one policy over another.

In other words, the Defendant Fields was not merely following federal policies when she took action against Ms. Eslin, as Defendants argue. Neither the federal regulations, nor the Administrative Plan, nor any other MHA board policy provided a clear-cut answer about what to do about Ms. Eslin.  Rather the Defendant Fields made "a considered decision based on [her] understanding of the law…" Pembaur at 484. These decisions were made by the highest official of the MHA, and thus her actions "may fairly be said to represent official policy." Monell at 694.

Again, Defendant Fields did not make a rogue decision. This was not a mistake by a misguided low-level employee. The actions taken by the MHA were made and approved by the person with the highest authority over the daily operations of the agency, the executive director. If allowed to proceed, the Plaintiff will be able to clearly show the following: Defendant Fields held the power to pursue termination proceedings. She had the power to make discretionary choices about when and how to terminate participants.  Her final approval was sought out in hard cases and novel termination proceedings. She participated in all termination hearings as the so-called representative of the housing authority and its official position. And she recognized the

power to override the hearing officer's decision at a termination hearing and reverse his decision as contrary to law.

Just as in <u>Pembaur</u>, it is Defendant Fields who, when presented with uncertainties in policy for MHA's Section 8 program, had to make policy to fill these holes for MHA by making "a deliberate choice to follow a course of action … from among various alternatives." <u>Pembaur</u>, 475 U.S. at 483. The MHA board makes no such policy to fill in the gaps in the federal regulations and Administrative Plan.

### 3. Defendant Fields Had Final Policymaking Authority, because her Decisions Were Final and Unreviewable

In determining who has final policymaking authority for a municipality or municipal agency, many courts have focused their inquiry not only on "custom or usage" or "acquiescence," but on whether or not the official's decision is reviewable. In <u>Kneipp v. Tedder</u>, 95 F.3d 1199 (3d Cir. 1996), the Third Circuit reversed summary judgment for defendants in a §1983 case against the City of Philadelphia alleging that several police officers left an intoxicated pedestrian to walk home alone in violation of her substantive due process rights and her liberty interest in personal safety. In remanding to the district court for a determination of who held final policymaking authority for training police officers, the court, advised that "in order to ascertain who is a policy maker a court must determine which official had final, unreviewable discretion to make a decision or take action." <u>Id.</u> at 1213.

Similarly, in a case against a Missouri county for the alleged rape of a prison inmate by a prison guard, the Eighth Circuit held that though the county was the final policymaker with regard to employment policy and discipline of officers at county prisons, the county had delegated this authority to the jail's director and his acts could thus bind the county. <u>Ware v. Jackson Cnty., Mo.</u>, 150 F.3d 873 (8th Cir. 1998). The court, citing <u>Praprotnik</u>, held that,

"[s]tated differently, where the right to review a decision is retained, there has been an incomplete delegation of authority, and municipal liability may not attach; on the other hand, an absolute delegation of authority may implicate the municipality." Id. at 885 (citation omitted). Because the county retained no such right to review the jail director's decisions, the jail director was the final policymaker for the jail's employment. The Eleventh Circuit has repeatedly stated that if an official's decision is unreviewable, he possesses final policymaking authority. For example, in Quinn v. Monroe Cnty., the county's former library director brought a §1983 claim against the county and the county administrator for alleged retaliation. 330 F.3d 1320 (11th Cir. 2003). In holding that the administrator was not the final policymaker as required to hold the county liable, the court stated,

> [t]he Eleventh Circuit has interpreted Monell′s policy or custom requirement to preclude § 1983 municipal liability for a subordinate official's decisions when the final policymaker delegates decisionmaking discretion to the subordinate, but retains the power to review the exercise of that discretion. Thus, final policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review.

Id. at 1325.  Because a career service council had the authority to review the administrator's decision, the plaintiff's Monell claims failed.

In the instant case, Plaintiff will be able to show that Defendant Fields was the final policymaker for MHA because her decisions regarding who, when, and why to terminate Section 8 benefits for the program's participants were final. Ms. Eslin will be able to show that while recipients of Section 8 benefits were entitled by federal regulations to a pre-termination hearing, the hearing officer's decisions for the MHA were reviewable by Defendant Fields, who has the authority to uphold or reverse the decision. Her determination of whether to uphold or reverse

the hearing officer is subject to no further review, giving Defendant Fields final and unreviewable authority over MHA policy for the Section 8 program.

Federal Section 8 regulations provide only that the public housing agency is not bound by a hearing decision that is contrary to HUD regulations or federal, State, or local law, 24 C.F.R. §982.555(f), but that section provides no administrative or judicial appeal process for reviewing compliance.  Connecticut law provides no judicial process for reviewing a Section 8 hearing decision. Judicial review of administrative proceedings in the Uniform Administrative Procedure Act, Chapter 54 of the Connecticut General Statutes, applies only to state agencies, not to local public housing agencies.  The Defendants have not proved that the MHA is a state agency, as defined in Conn. Gen. Stat. §4-166(a)(1).[2]

### C.  The Cases upon which Defendants Rely Are Distinguishable from This Matter, Because They Involve Employment Decisions, not Termination Proceedings of Section 8 Recipients

The cases upon which the Defendants rely are not directly applicable to this matter because those involve employment decisions while this case involves the termination of a participant from the Section 8 voucher program. The difference is important because the analysis of where policy-making authority resides is different in employment situations than in a housing assistance termination proceeding. *See* Chin v.  New York City Housing Authority, 575 F. Supp. 2d 554, 562 -563 (S.D.N.Y. 2008) ("The critical characteristic of final policymakers when employment is at issue is whether the municipal official has authority to formulate the rules governing personnel decisions rather than authority to make decisions pursuant to those rules – e.g. the hiring and firing of subordinates.") (emphasis added). *See also* Gorokhovsky v. City of New York, No. 10 Civ. 8848(LBS), 2011 WL 2019423 (S.D.N.Y. May 19, 2011) (holding that,

---

[2] In some states, Section 8 participants may judicially appeal termination decisions.  *See, e.g.* 2 Pa.C.S. § 752; Carter v. Olmsted County Housing and Redevelopment Authority, 574 N.W.2d 725 (Minn.App.,1998).

under New York law, "the NYCHA's three-person Board of Commissioners and the Commissioner of Citywide Administrative Services are the only people expressly granted final policymaking authority <u>in the area of employment</u> at the NYCHA.")(emphasis added).  It bears repeating: whether an official possesses final policymaking authority depends on whether she is a policymaker in a particular area. <u>Jeffes v. Barnes</u>, 208 F.3d at 57. Therefore, decisions analyzing policymaking authority in the area of employment or personnel decisions, even if one of the parties is a housing authority, are not authoritative to an evaluation of policymaking authority of officials acting in other areas, such as termination proceedings.

It should also be noted that the Defendants have cited no cases analyzing Connecticut state law to discern whether executive officers of a housing authority can create policy when they make a decision to terminate a participant from the Section 8 program. The one cited state case regarding the powers of a housing authority's commissioners makes no mention of where final policymaking authority lies, much less whether the board retains <u>sole</u> policymaking authority, as the Defendants imply. Rather, the decision merely states that a housing authority "is governed by a board of five commissioners who are public officers." <u>Hous. Auth. v. Dorsey</u>, 164 Conn. 247, 251, *cert. denied*, 414 U.S. 1043, (1973). Further, the Defendants provide no support whatsoever for their assertion that "any authority delegated to Defendant Fields, as the Housing Authority's Executive Director, is constrained by the Housing Authority's policies as promulgated by the Board of Commissioners." Defs.' Mem.  Supp. Mot. Dismiss, at 9, Feb. 27, 2012, ECF Document No. 62-1.

In contrast, numerous federal court decisions, including at least one from the District of Connecticut, have permitted actions filed pursuant to §1983 to proceed against municipal housing authorities for acts or decisions made by an executive director or lower-level employee

in wrongfully terminating a Section 8 participant's assistance. See, e.g., Edgecomb v. Hous. Auth. of Town of Vernon, 824 F. Supp. 312 (D. Conn. 1993); Basco v. Machin, 514 F.3d 1177 (11th Cir. 2008); Ervin v. Hous. Auth. of Birmingham Dist., 281 Fed. Appx. 938 (11th Cir. 2008); Gammons v. Massachusetts Dept. of Hous. and Cmty. Dev., 523 F.Supp.2d 76 (D. Mass. 2007); Loving v. Brainerd Hous. & Redev. Auth., Civil No. 08-1349 (JRT/RLE), 2009 WL 294289 (D.Minn. Feb. 5, 2009); Stevenson v. Willis, 579 F.Supp.2d 913 (N.D. Ohio 2008); Woods v. Willis, No. 3:09CV2412, 2010 WL 3808279 (N.D. Ohio Sept. 27, 2010); Boykins v. Cmty. Dev. Corp. No.10-CV-3788 (JS)(ARL), 2011 WL 1059183 (E.D.N.Y. March 21, 2011); McCall v. Montgomery Hous. Auth., 809 F. Supp. 2d 1314 (M.D. Ala. 2011). While many of these cases do not explicitly discuss Monell or the final policy-maker doctrine, the factual circumstances at issue in each of these cases involve housing authority employees taking actions to terminate a Section 8 participant, just as the individual defendants here have done.  This implies that such employees engage in policy-making when they conduct hearings in a particular fashion or ratify decisions to terminate participants.

For example, in Davis v. Mansfield Metropolitan Housing Authority, 751 F.2d 180 (6th Cir. 1984), plaintiffs brought §1983 claims against a housing authority ("HA") and its executive director alleging that the HA deprived them of due process by denying eligibility to certain applicants and terminating certain participants from Section 8 without a hearing. Though the court did not discuss—and the parties do not appear to have argued—the Monell issue, it found that the trial court's findings that the executive director approved and authorized the wrongful conduct of the HA's employees and the executive director's own participation in the wrongful conduct were not clearly erroneous and held the HA and executive director liable for the due process deprivations. Id. at 185.

**IV.**      **CONCLUSION**

The MHA is responsible for the wrongful termination of Ms. Eslin from the Section 8 program because the actions taken against her were made or ratified by Defendant Rebecca Fields, who serves as the final policy-maker for the MHA in this matter. Thus, Ms. Eslin's claims meet the standard set out by <u>Monell</u>. For the reasons stated above, this Court should deny the motion to dismiss Ms. Eslin's claim.

Respectfully submitted,

By: /s/ Aaron P. Wenzloff_____
Aaron P. Wenzloff
Connecticut Legal Services, Inc.
211 State Street
Bridgeport, CT 06604
Telephone: 203-336-3851 x4113
Facsimile 203-333-4976
Email: awenzloff@connlegalservices.org
Federal Bar No. ct28616

Richard L. Tenenbaum
Connecticut Legal Services, Inc.
211 State Street
Bridgeport, CT 06604
(203) 336-3851, ext. 4112
Fax (203) 333-4976
RTenenbaum@connlegalservices.org
Federal Bar no. ct16681

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**************************************************
KARYN T. ESLIN                                   *
PLAINTIFF                                        *
                                                 *
v.                                               *    Civil Action No
                                                 *    3:11-CV-00134 (JCH)
HOUSING AUTHORITY OF THE TOWN OF                 *
MANSFIELD, ET AL.                                *
                                                 *    March 19, 2012
DEFENDANTS                                       *
                                                 *
**************************************************

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2012, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System

By: _/s/ Aaron P. Wenzloff_____

AARON P. WENZLOFF, for
Connecticut Legal Services, Inc.
211 State Street
Bridgeport, CT 06604
Telephone: 203-336-3851 x4113
Facsimile 203-333-4976
Email: awenzloff@connlegalservices.org
Federal Bar No. ct28616